PETERS, Appellant, vs. PERSONNEL BOARD, Respondent.*

*January 18—February 15, 1949.*

* Motion for rehearing denied, with $25 costs, on April 12, 1949.

*E. C. Mann* of Ripon, attorney, and *Chester J. Niebler* of Milwaukee of counsel, for the appellant.

For the respondent there was a brief by the *Attorney General, Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mr. Honeck.*

WICKHEM, J.    This is a proceeding under chs. 16 and 227, Stats. 1945, instituted by an employee of the Motor Vehicle Department and raising the question as to his proper classification and pay as such employee.

The following facts are disclosed by the record: In January, 1946, Peters was appointed under the classification of war worker II to work in the office of the Motor Vehicle Department.    In October of the same year he was assigned to a regular position in that department as junior clerk, his probationary period beginning then and being successfully concluded on May 7, 1947.    In February, 1947, upon request of the appointive officer of the Motor Vehicle Department the Bureau of Personnel created a classification entitled "driver's license examiner."    On April 15, 1947, the director of the Motor Vehicle Department requested that Peters be reclassified to the new classification as of May 1, 1947.    This request was based upon the fact that the work actually done by Peters under the classification "junior clerk" was that of "driver's

license examiner." It is conceded that the change in classification could not take effect until May 7th because Peters' probationary period did not end until that time. On May 3d Peters took an examination given by the Bureau of Personnel for driver's license examiner and on May 15th received notice of a change in his status from junior clerk to driver's license examiner effective May 1st. On or about June 3d Peters received a pay check in a sum less than would be due him as driver's license examiner, whereupon he protested to the director of the Motor Vehicle Department and to the Bureau of Personnel that his pay did not correspond to his classification. He did, however, make arrangements to pay group insurance premiums through the department and to authorize the department to handle certain deductions from his check. Thereafter, without formal action, Peters was requested to do work similar to that of a senior clerk which work he did under protest until such time as he found the work deleterious to his health. On July 22, 1947, Peters requested sick leave in writing and was requested by the head of the department to give specific data in respect to this request. After submitting such information no further action was taken by the department. On July 24, 1947, Peters received a notice from the Bureau of Personnel that his examination theretofore taken for driver's license examiner would be held in abeyance. On or about June 3, 1947, the director of the Motor Vehicle Department requested the director of the Bureau of Personnel to abolish the position of driver's license examiner and on August 29, 1947, a communication from the Bureau of Personnel to the Motor Vehicle Department advised that Peters' position would be reclassified as that of senior clerk effective September 1, 1947. Notice of this came to Peters on or about August 30th, whereupon he immediately appealed to the Bureau of Personnel. Between August 2d and September 3d Peters called in person upon the head of the Motor Vehicle Department offering to work as driver's license examiner and

was advised that the only work in the department available to him was that of senior clerk since the duties of driver's license examiner had been spread among the various clerks at the direction of the head of the department. Ultimately the appeal of Peters to the board was disposed of by a holding that Peters was entitled to pay as driver's license examiner from the time he was so classified until he terminated his employment with the department on July 22, 1947. It was further found that as of the date of the decision Peters had no status in the Motor Vehicle Department.

The original decision to have a classification of driver's license examiner was primarily for a group of positions in the department of the Milwaukee office to accommodate the large number of applications for driver's license made there. After consideration the salary was established at $30 higher than that of senior clerk. One of the specifications for the position was that the preferred ages should be from twenty-one to thirty-five. Peters was older than thirty-five years. Upon applying for leave to take an examination for this classification, Peters was advised of the doubt concerning his age qualifications. At the time the director had forgotten that the salary for driver's license examiner was higher than that of senior clerk and stated that he had no objection to the examination because in any case Peters was entitled to classification as a senior clerk. Thereafter it was discovered that no funds would be available for hiring men in the Milwaukee office which was the principal reason for creating the new classification, and the classification and examination were accordingly canceled. Peters was reallocated to the position of senior clerk as of the date of abandonment and approval was given to his allocation to the position of driver's license examiner from May 1st until the classification was abandoned.

It is contended by Peters that his original reclassification as driver's license examiner was a promotion and that every step necessary to make that an effective promotion was taken; that

his subsequent reclassification as senior clerk with a reduction in pay is a demotion; that a demotion is effective only when certain legal requirements are met.

Reliance is had upon sec. 16.24 (1), Stats. 1945, to the effect that "no permanent subordinate or employee in the competitive division who shall have been appointed under the provisions of sections 16.01 to 16.30 or the rules made pursuant thereto shall be . . . reduced in pay or position except for just cause, which shall not be religious or political. . . ." This contention fails to distinguish between reclassification of positions by the Bureau of Personnel which does not of itself affect the status of petitioner and a demotion or promotion which does. When a position is reallocated to a higher grade the person who theretofore occupied the position may occupy it thereafter only by complying with statutes and rules respecting promotions or original appointments. If the position is reallocated downward by the Bureau of Personnel it has the effect of abolishing the position theretofore held by the employee and he may be given the choice of accepting a position in the lower classification if he is eligible or of being certified to another position in a higher classification if one is available and he is eligible. If there is no such higher classification he has no choice but to accept a position in the lower grade or to terminate his services. This is the effect of our decision in *Odau v. Personnel Board,* 250 Wis. 600, 27 N. W. (2d) 726. The initial creation of the office of driver's license examiner and its subsequent reallocation downward were, as the statute contemplates, made by the director of personnel and not by the director of the Motor Vehicle Department. While petitioner was duly promoted to a validly created position of higher classification than that which he previously held, that office was abolished by action of the Bureau of Personnel and petitioner was required to accept the lower classification of senior clerk as no other classification was available. In this case petitioner was neither discharged, demoted, nor laid off.

In fact, he ceased to work for the department before September 1st which was the date upon which the reallocation became effective. There was no possibility of restoring Peters to the position of driver's license examiner because that position was abolished.

Peters further contends that he did not voluntarily quit because between the dates of August 2d and September 3d he expressed to the director his willingness to perform the duties of driver's license examiner and that he merely refused to perform those of senior clerk and this only because he was physically unable to discharge the duties of that office. This is the foundation for the further contention that the Bureau of Personnel erroneously held that Peters had no status in the Motor Vehicle Department as of the date of its disposition of his appeal. The answer to this is that up to September 1st Peters could not abridge the powers of the director of the Motor Vehicle Department by stipulating the kind of work he would do under his classification and he could not decline work assigned, at least if the work was not wholly inappropriate to the classification. After September 1st it was Peters' duty to discharge the functions of a senior clerk. Refusal to perform validly assigned duties constituted a voluntary quitting of his position.

Peters contends that prejudicial error resulted in trying his two appeals to the Bureau of Personnel at the same time. We discover nothing in this prejudicial to Peters. He prevailed upon his first appeal and his second was, as we hold, properly denied. We conclude that the judgment should be affirmed.

*By the Court.*—Judgment affirmed.

MARTIN, J., took no part.